## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 24-cv-00688-JLH |
| v. | ) | |
| | ) | |
| NSC PARTNERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF ELI LILLY AND COMPANY'S OPPOSITION TO DEFENDANT NSC PARTNERS, LLC'S MOTION TO DISMISS OR TRANSFER

OF COUNSEL:

David Lender (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

Kevin R. Shannon (#3137)
Christopher N. Kelly (#5717)
Callan R. Jackson (#6292)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
kshannon@potteranderson.com
ckelly@potteranderson.com
cjackson@potteranderson.com

*Counsel for Plaintiff Eli Lilly and Company*

Dated: July 9, 2024

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND................................................................................................2

LEGAL STANDARD....................................................................................................3

ARGUMENT ...............................................................................................................4

I.  The First-Filed Rule Does Not Require Dismissal of this Action .......................................4

    A.  The Illinois Complaint Was Not the First Filed......................................................4

    B.  The First Filed Rule Applies In Cases Of Concurrent Jurisdiction, Which Does Not Exist Here...............................................................................................6

    C.  Even If The Illinois Complaint Was The First Filed And There Is Jurisdiction In Illinois, The First-Filed Rule Still Should Not Be Applied ......................................7

II.  Lilly's Complaint Properly States A Claim For A Declaratory Judgment .........................9

    A.  Arbitrability................................................................................................9

    B.  Defendant's Claims are Subject to Delaware's Statute of Limitations.................12

III.  This Action Should Not Be Transferred As Illinois Is Not An Appropriate Forum..........17

CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)................................................................................................10, 11

*Auromedics Pharma LLC v. Ingenus Pharm., LLC*,
   2021 WL 3048406 (D. Del. July 20, 2021) *report and recommendation
   adopted*, 2021 WL 3422347 (D. Del. Aug. 5, 2021) ........................................................10, 12

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997).................................................................................................3

*Chavez v. Dole Food Co.*,
   836 F.3d 205 (3d Cir. 2016)..................................................................................................7

*CHC Invs., LLC v. FirstSun Cap. Bancorp*,
   2020 WL 1480857 (Del. Ch. Mar. 23, 2020), *aff'd*, 241 A.3d 221 (Del. 2020).....................15

*Citrix Sys., Inc. v. Parallel Networks Licensing, LLC*,
   2020 WL 2309073 (D. Del. May 8, 2020), *report and recommendation
   adopted*, 2020 WL 8079822 (D. Del. June 4, 2020)..............................................................17

*Coinbase v. Suski*,
   144 S. Ct. 1186 (2024).........................................................................................................11

*Crosley Corp. v. Hazeltine Corp.*,
   122 F. 2d 925 (3d Cir. 1941).................................................................................................6

*In re DBSI, Inc.*,
   2014 WL 4828882 (D. Del. Sept. 25, 2024).........................................................................18

*E.E.O.C. v. Univ. of Pa.*,
   850 F.2d 969 (3d Cir. 1988).............................................................................................7, 8, 9

*Ellis v. State of Ill.*,
   1992 WL 332293 (N.D. Ill. Nov. 6, 1992) ...........................................................................5

*Flintkote Co. v. Aviva P.L.C.*,
   2015 WL 1405922 (D. Del. Mar. 25, 2015) .........................................................................7

*GNH Grp., Inc. v. Guggenheim Holdings., LLC*,
   2020 WL 4287358 (D. Del. July 27, 2020) ....................................................................10, 11

*Hatcher v. Collecto*,
   2021 WL 765759 (D. Del. Feb. 26, 2021) .......................................................................13, 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) .................................................................................................9, 10, 11

*Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement
   Workers of Am.*,
   502 F. App'x 201 (3d Cir. 2012) ...........................................................................8

*Jones v. Niagara Frontier Transp. Auth.*,
   722 F.2d 20 (2d Cir. 1983)......................................................................................5

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)....................................................................................17

*Lamps Plus, Inc. v. Varela*,
   587 U.S. 176 (2019)...............................................................................................10

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir. 2000)....................................................................................3

*Moorish Sci. Temple of Am. v. City of Berwyn*,
   2011 WL 3898046 (N.D. Ill. Sept. 6, 2011) .........................................................5

*Pack v. Beech Aircraft Corp.*,
   132 A.2d 54 (Del. 1957) .......................................................................................13

*Philos Techs., Inc. v. Philos & D, Inc.*,
   645 F.3d 851 (7th Cir. 2011) ..................................................................................4

*Pinnavaia ex. rel. Pinnavaia v. Celotex Asbestos Settlement Tr.*,
   271 F. Supp. 3d 705 (D. Del. 2017), *aff'd,* 2018 WL 11446482 (3d Cir. 2018) ......................3

*In re Remicade Antitrust Litig.*,
   938 F. 3d 515 (3d Cir. 2019).................................................................................10

*Saudi Basic Indust. Corp. v. Mobil Yanbu Petrochemical Co.*,
   866 A.2d 1 (Del. 2005) ...........................................................................13, 14, 15

*Scandia Down Corp. v. Euroquilt, Inc.*,
   772 F.2d 1423 (7th Cir. 1985) .............................................................................4, 5

*Smith v. McIver*,
   22 U.S. 532 (1824)..................................................................................................6

*Studiengesellschaft Kohle, mbH v. Hercules, Inc.*,
   748 F. Supp. 247 (D. Del. 1990)...........................................................................16

*Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook Cnty.*,
   543 F.2d 32 (7th Cir. 1976) ....................................................................................5

*Tamburo v. Dworkin*,
　2005 WL 8163300 (N.D. Ill. June 24, 2005) ........................................................5

*TL of Fla., Inc. v. Terex Corp.*,
　54 F. Supp. 3d 320 (D. Del. 2014) ......................................................................15

*U.S. v. Hagerman*,
　545 F.3d 579 (7th Cir. 2008) ............................................................................4, 5

*U.S. v. Hagerman*,
　549 F.3d 536 (7th Cir. 2008) ................................................................................4

*Zirpoli v. Midland Funding, LLC*,
　48 F.4th 136 (3d Cir. 2022) ...........................................................................11, 12

**Statutes**

10 Del. C. § 8121 .......................................................................................................13

28 U.S.C. § 1404(a) ...................................................................................................17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................3

Plaintiff Eli Lilly and Company ("Lilly") respectfully opposes Defendant NSC Partners, LLC's ("Defendant") Motion to Dismiss or Transfer (the "Motion"). The Motion is Defendant's attempt to evade proper jurisdiction in this District in favor of improper jurisdiction in Illinois that violates established Seventh Circuit precedent. Defendant filed an arbitration against Lilly on May 2, 2024, pursuant to an agreement to which Defendant is not a party. Hours after Lilly informed Defendant that it disputed the arbitrability of Defendant's claims, Defendant rushed to improperly submit a *pro se* complaint to the Northern District of Illinois, seeking to compel Lilly to arbitrate the matter. Under Seventh Circuit precedent. an LLC may not file a *pro se* complaint, but Defendant submitted one in a transparent effort to try to secure the designation of being the "first-filed" and thereby take advantage of a purportedly more favorable statute of limitations. Lilly, however, is incorporated and headquartered in Indiana, not in Illinois, and Defendant has made no mention of any facts that support jurisdiction over Lilly in Illinois.

The next day, Lilly filed the instant complaint in this Court, seeking a declaration that Lilly is not required to arbitrate with Defendant. Lilly's decision to file in this Court is based on the fact that Defendant is a Delaware limited liability company, and is subject to personal jurisdiction here. The following day, June 12, 2024, Defendant's complaint was actually filed in Illinois, as Defendant had belatedly obtained Illinois counsel. The complaint in this case, filed on June 11, 2024, therefore, is the first-filed complaint. This Court, as the recipient of the true first filed complaint and having jurisdiction over both parties, is the proper forum for the determination that Lilly is not required to arbitrate with Defendant.

In addition to being the first-filed, the Complaint states a claim for declaratory judgments that Defendant cannot arbitrate with Lilly and that Defendant's claims are barred by Delaware's statute of limitations. It is within the authority of this Court to determine whether an arbitration

1

agreement exists and, here, it does not. Lilly did not enter into any agreement with Defendant nor did it agree to arbitrate any claims brought by Defendant. This Court is well within its authority to determine that Defendant is not entitled to arbitrate with Lilly. Further, as a Delaware limited liability company, Defendant is subject to personal jurisdiction in Delaware. Lilly is not forum shopping, and no exceptions to Delaware's statute of limitations should apply to Defendant's claims.

Lilly has pled facts that show, particularly when viewed in the light most favorable to Lilly, that it is entitled to its requested declaratory judgments and that Defendant's Motion should be denied.

## **FACTUAL BACKGROUND**

Lilly's Complaint for Declaratory Judgment (the "Complaint"), filed on June 11, 2024, lays out the factual background between the parties.[1] *See* D.I. 1.

As relevant to the instant Motion, Defendant filed an arbitration against Lilly with JAMS in Chicago, Illinois on May 2, 2024. As discussed more fully below, the current dispute between the parties is not subject to arbitration as Lilly never agreed to arbitrate any dispute with Defendant.

On June 10, 2024, Lilly informed Defendant that it did not believe that it was subject to arbitration with Defendant. Hours later, fully aware that Lilly was going to dispute arbitrability, Defendant improperly submitted a complaint, *pro se*, in the United States District Court for the Northern District of Illinois (the "Illinois Complaint"), seeking to compel arbitration and requesting a determination that it is entitled to arbitrate under the terminated APNS Collaboration Agreement, an agreement to which Defendant is not a party. The Illinois Complaint pleads no facts

---

[1] Capitalized terms used herein but not explicitly defined shall have the meaning ascribed to them in the Complaint. *See* Complaint.

2

regarding the basis for jurisdiction over Lilly in Illinois; and instead admits that Lilly is an Indiana company with its principal place of business in Indianapolis.

The next day, on June 11, 2024, Lilly filed the Complaint in this Court against Defendant, a Delaware resident. Lilly requested a declaration that Defendant does not have any rights under the terminated APNS Collaboration Agreement and, separately, that Defendant's claims are barred by the statute of limitations. *See id.* at 8-9. On June 12, 2024, Defendant secured counsel licensed in Illinois, after which, Defendant properly filed its Illinois Complaint, a day after Lilly filed the instant action. *See* C.A. No. 24-cv-04804 (N.D. Ill.), D.I. 3, D.I. 4, D.I. 5, D.I. 11. Defendant filed the Motion on June 25, 2024.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all material allegations of the complaint." *Pinnavaia ex. rel. Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997), *aff'd,* 2018 WL 11446482 (3d Cir. 2018) (internal quotations omitted). The Court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotations omitted).

## ARGUMENT

### I. The First-Filed Rule Does Not Require Dismissal of this Action

#### A. The Illinois Complaint Was Not the First Filed

Defendant argues that the Illinois Complaint was the first filed and, therefore, under the "first-filed rule" the instant action should be dismissed. Defendant fails to mention that, while the Illinois Complaint was improperly submitted on June 10, 2024, it was not *filed* until June 12, 2024, which was after the filing of the Complaint in this action. *Compare* C.A. No. 24-cv-4804 (N.D. Ill.), D.I. 1, D.I. 11 *with* C.A. No. 24-cv-688 (D. Del), D.I. 1. The docket entries make clear that, while the Illinois Complaint was "received via *pro se* email" on June 10, 2024, it was not "filed" until two days later, on June 12, 2024. Therefore, the Complaint in this action, which was indisputably filed on June 11, 2024, was the first filed and – under the first-filed rule—*this* action is the operative one.

The Illinois Complaint was not filed on June 10, 2024 because Defendant is a limited liability company and, under Seventh Circuit jurisprudence, corporations and limited liability companies cannot represent themselves. "[A] corporation . . . is legally incapable of appearing in court unless represented by counsel." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857-58 (7th Cir. 2011). In other words, in the Seventh Circuit, "corporations must appear by counsel or not at all." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985). This rule encompasses limited liability companies as well. *See U.S. v. Hagerman*, 545 F.3d 579, 582 (7th Cir. 2008); *U.S. v. Hagerman*, 549 F.3d 536, 537 (7th Cir. 2008) ("[W]e ruled that a limited liability company . . ., like a corporation, cannot litigate in a federal court unless it is represented by a lawyer."). As described by the Seventh Circuit, "the right to conduct business in a form that confers privileges, such as the limited personal liability of the owners for tort or contract claims

4

against the business, carries with it obligations one of which is to hire a lawyer if you want to sue or defend on behalf of the entity. *Pro se* litigation is a burden on the judiciary . . . and the burden is not to be borne when the litigant has chosen to do business in entity form." *Hagerman*, 545 F.3d at 581-82 (dismissing appeal where the appellant, a limited liability company, was not represented by counsel) (emphasis added).

Courts, including the Northern District of Illinois, must dismiss complaints submitted by business entities on a *pro se* basis. *See Ellis v. State of Ill.*, 1992 WL 332293, at *3 (N.D. Ill. Nov. 6, 1992) (holding that "an additional reason that the court must dismiss plaintiffs' complaint" was that a non-lawyer was representing a corporation); *Moorish Sci. Temple of Am. v. City of Berwyn*, 2011 WL 3898046, at *3-4 (N.D. Ill. Sept. 6, 2011) (dismissing complaint where non-lawyer attempted to file claim on behalf of a corporation); *Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook Cnty.*, 543 F.2d 32, 33-34 (7th Cir. 1976) (affirming district court's dismissal of complaint where corporation was represented by a non-lawyer). Further, courts do not permit parties to circumvent the rule that business entities must be represented by counsel. *See Scandia Down Corp.*, 772 F.2d at 1427 (refusing to allow a corporation to "manipulate[e] things so that it has no counsel"); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) (describing how federal courts have "disapproved any circumvention of the rule by a procedural device of an assignment of the corporation's claims to a lay individual."); *Tamburo v. Dworkin*, 2005 WL 8163300, at *2 (N.D. Ill. June 24, 2005) (concluding that the assignment of a company's claims to an individual did "not excuse the requirement that those claims be prosecuted through a duly licensed attorney").

Despite the clear precedent prohibiting limited liability companies from litigating without counsel, Defendant submitted a *pro se* complaint on June 10, 2024. This was Defendant's improper

attempt to rush to the courthouse, before it secured local counsel, in a blatant effort to file prior to Lilly. Defendant flagrantly ignored rules and precedent prohibiting this improper maneuver, and its attempt to circumvent these well-established rules should not be rewarded by considering its improperly submitted Illinois Complaint to be the "first-filed." Defendant's Illinois Complaint was not actually filed until June 12, 2024, when it secured the necessary counsel, which post-dates Lilly's June 11, 2024 complaint, making the Complaint filed here the first-filed.

### B.    The First Filed Rule Applies In Cases Of Concurrent Jurisdiction, Which Does Not Exist Here

Even if the Court considers the Illinois Complaint to be the first-filed, the "first-filed rule" is still inapplicable. The "first-filed rule" involves cases of concurrent jurisdiction, which does not exist here, as jurisdiction over Lilly is not proper in Illinois. A key tenet of the first-filed rule is that "[i]n all cases of *concurrent jurisdiction*, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535 (1824) (emphasis added). "The party who first brings a controversy into a court of *competent jurisdiction* for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F. 2d 925, 930 (3d Cir. 1941) (emphasis added). Here, there is no "concurrent jurisdiction," since the Northern District of Illinois does not have "competent jurisdiction" for adjudication of this matter, *see id.*, as there is no jurisdiction over Lilly in Illinois.[2]

In the Illinois Complaint, Defendant pled no facts that established Lilly's connection to Illinois. *See* C.A. No. 24-cv-4804 (N.D. Ill.), D.I. 11. Lilly is an Indiana company with its principal

---

[2] In that regard, Lilly intends to file a motion to dismiss the Illinois Complaint or transfer to this Court.

place of business in Indianapolis. *See* Anderson Decl. ¶¶ 4-5.[3] There is no basis for Lilly to be subject to jurisdiction in Illinois. Without personal jurisdiction over Lilly, therefore, Illinois does not have competent jurisdiction to adjudicate this matter. As such, the first-filed rule does not apply, and the Illinois Complaint is likely to be dismissed for lack of jurisdiction. This Court should not dismiss the Complaint based on Defendant's erroneous claims that the first-filed rule applies; it does not.

### C.    Even If The Illinois Complaint Was The First Filed And There Is Jurisdiction In Illinois, The First-Filed Rule Still Should Not Be Applied

Further, even setting aside that limited liability companies cannot file a *pro se* complaint and that jurisdiction over Lilly is not proper in Illinois, the Court still should not apply the first-filed rule. Courts can use their discretion to depart from the first-filed rule in certain situations. "[T]he first filed rule is grounded on equitable principles and requires district court judges to fashion[] a flexible response to the issue of concurrent jurisdiction." *Chavez v. Dole Food Co.*, 836 F.3d 205, 216 (3d Cir. 2016) (internal quotation marks omitted). The first-filed rule "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) (holding that the district court did not abuse its discretion by declining to invoke the first-filed rule); *see also Flintkote Co. v. Aviva P.L.C.*, 2015 WL 1405922, at *5 (D. Del. Mar. 25, 2015) (refusing to apply the first-filed rule where plaintiff engaged in an anticipatory filing when it had knowledge that defendant was going to file an action regarding the same issues in another district). District courts, as the Third Circuit has held, "have *always* had discretion to

---

[3] "Anderson Decl." refers to the contemporaneously filed Declaration Of Christopher Anderson In Support Of Plaintiff Eli Lilly and Company's Opposition to Defendant NSC Partners, LLC's Motion To Dismiss Or Transfer.

retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C.*, 850 F.2d at 972 (emphasis added). "[T]he first-filed rule may properly be departed from as the equities of a given case require." *Honeywell Int'l. Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012). Specifically, as the Third Circuit has stated, the first filed rule is not a "dispositive rule, nor does it override the district court's discretionary authority to determine whether or not to entertain a suit for declaratory relief." *Id.*

In *E.E.O.C.*, the Equal Employment Opportunity Commission ("EEOC") requested certain records from the defendant university, which refused to provide them. *See* 850 F.2d at 972. The EEOC informed the defendant that it would file a subpoena enforcement action within twenty days, if the defendant did not provide the requested records. Three days prior to this deadline, the defendant filed for a declaratory judgment and injunctive relief in the United States District Court for the District of Columbia, in an attempt to avoid the EEOC's subpoena enforcement action in the Eastern District of Pennsylvania. *See id.* at 973.

The Third Circuit affirmed the District Court's conclusion that the first-filed rule did not apply to the case. "When the [defendant] filed the first suit in the District of Columbia Circuit, it knew the EEOC's enforcement action in the Eastern District of Pennsylvania was imminent, and that precedent in this Circuit, might favor resolution of the dispute in favor of the EEOC." *Id.* at 972. "Under these circumstances," the Third Circuit affirmed the district court's conclusion that "the first-filed rule does not govern this case." *Id.* As the Third Circuit described, "[b]ecause the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent . . . action." *Id.* at 978.

Much like in *E.E.O.C.*, Defendant's actions merit the Court's use of discretion to depart from the first-filed rule (even if it applied). Defendant rushed to file its impermissible *pro se* complaint to try to beat Lilly to the courthouse, as it sought to secure the designation of being the first filed and to try to take advantage of Illinois' statute of limitations. Defendant's *pro se* Illinois Complaint was an attempt to "circumvent local law" and "preempt an imminent . . . action" in a federal district where the precedent would favor resolution in favor of Lilly. *See id.* at 978. As in *E.E.O.C.*, principles of comity and equity support departure from the first-filed rule, so as not to reward Defendant's improper motives in filling an impermissible *pro se* complaint to evade what would be a proper declaratory judgment action by Lilly. Defendant knew that an action by Lilly was imminent, and initiated a proceeding in the Northern District of Illinois with the motive to avoid being subject to that action. This is evidence of Defendant's gamesmanship and bad faith and it should not be rewarded, just as the Third Circuit did not reward such questionable motives in *E.E.O.C.*

## II.    Lilly's Complaint Properly States A Claim For A Declaratory Judgment

### A.    Arbitrability

Defendant asserts that the Complaint fails to state a claim in part because the issue of arbitrability must be arbitrated. *See* Br. at 13. Defendant incorrectly frames the issue as "whether a non-signatory to a contract containing an arbitration provision can invoke the provision" and claims that the Complaint does not state a claim as this is a question of arbitrability for the arbitrator. *See* Br. at 13. Instead, the issue for which Lilly seeks a declaratory judgment is whether Defendant has any rights under the APNS Collaboration Agreement—which it does not. *See* Complaint ¶¶ 38-45. A court's first step in such an inquiry is to determine whether an arbitration agreement even exists. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69

(2019). Here, Lilly alleges that no such arbitration agreement exists between Lilly and Defendant and that Defendant has not acquired any rights under the APNS Collaboration Agreement (pursuant to which Lilly agreed to arbitrate with APNS). *See* Complaint ¶¶ 38-45. Defendant claims to have acquired such rights pursuant to certain promissory notes it executed with APNS for loans totaling $7,900. Lilly disputes this. Therefore, a gating issue as to whether Defendant stepped into the APNS Collaboration Agreement turns on an analysis of those promissory notes. But the promissory notes contain no arbitration clause at all.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). After all, the underlying basis for arbitration is that "arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). A court must, therefore, "before referring a dispute to an arbitrator," "determine[] whether a valid arbitration agreement exists." *Henry Schein*, 586 U.S. at 69; *see also GNH Grp., Inc. v. Guggenheim Holdings., LLC*, 2020 WL 4287358, at *3 (D. Del. July 27, 2020) ("Therefore, before referring the dispute to an arbitrator, a court must determine whether a valid arbitration agreement exists."), *report and recommendation adopted*, 2020 WL 13679908 (D. Del. Aug. 19, 2020). In other words, "before compelling any party to arbitrate . . . a court must consider two 'gateway' questions: (1) whether the parties have a valid arbitration agreement at all (i.e., its enforceability), and (2) whether a concededly binding arbitration clause applies to a certain type of controversy (i.e., its scope)." *In re Remicade Antitrust Litig.*, 938 F. 3d 515, 519 (3d Cir. 2019) (internal quotation marks omitted); *see also Auromedics Pharma LLC v. Ingenus Pharm., LLC*, 2021 WL 3048406, *4 (D. Del. July 20, 2021), *report and recommendation adopted*, 2021 WL 3422347 (D. Del. Aug. 5, 2021). Where "the question is whether the parties agreed to send the given dispute to arbitration

. . . per usual, *that* question must be answered by a court." *Coinbase v. Suski*, 144 S. Ct. 1186, 1193 (2024) (emphasis in original).

Defendant agrees that the determination of the existence of an arbitration agreement is for a court, but, without any further support, claims that is not the issue in this case. *See* Br. at 14 n.4. Contrary to Defendant's claims, that is exactly the issue. Lilly did not agree to arbitrate with Defendant nor did it agree to arbitrate the issue of whether Defendant properly acquired APNS's rights under the APNS Collaboration Agreement. *See AT&T Techs.*, 475 U.S. at 648. Here, Lilly seeks a declaration of the first "gateway question": that a valid arbitration agreement does not exist, as Defendant has not properly acquired APNS's rights under the APNS Collaboration Agreement. This determination is the province of the Court—a principle with which Defendant agrees. *See Henry Schein*, 586 U.S. at 69 (requiring a court to determine whether a valid arbitration agreement exists); *Coinbase*, 144 S. Ct. at 1191 (holding that "a court needs to decide what the parties have agreed to"). Therefore, as the Court is the proper entity to make such a determination, Lilly's Complaint appropriately states a claim.[4]

Defendant's cited cases are of no import. For instance, in *Zirpoli*, the text of the relevant arbitration agreement provided that the parties would arbitrate with any "past, present or future

---

[4] Defendant focuses on whether there is clear and unmistakable evidence that Lilly and Defendant intended to delegate arbitrability questions to the arbitrator. This question need only be addressed if the Court finds that a valid arbitration agreement exists. If a valid arbitration agreement exists— which it does not in this case—the court then must find "clear and unmistakable evidence" that the parties intended to delegate arbitrability questions to the arbitrator, in order to send the dispute to arbitration. *Henry Schein*, 586 U.S. at 72; *see also GNH Grp.*, 2020 WL 4287358, at *4 n.2 (holding that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."). As the Court stated in *GNH Group*, "how could there be [clear and unmistakable] evidence" that the Parties agreed for an arbitrator to determine arbitrability, "when [Lilly] and [Defendant] have not signed an agreement with each other containing an arbitration provision with respect to any such claims?" *GNH Grp., Inc.*, 2020 WL 4287358, at *5.

respective . . . assignees" and also stated that any claim, including "anything related to the arbitrability of any claim pursuant to the Agreement" should be arbitrated. *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 143, 145 (3d Cir. 2022) (cleaned up). Unlike the agreement at issue in *Zirpoli*, there is no such language in the APNS Collaboration Agreement that requires Lilly to arbitrate with any entity other than APNS, which is why determining whether Defendant has any rights under the APNS Collaboration Agreement is essential. The fact that the APNS Collaboration Agreement incorporates the JAMS rules or that such rules may authorize the arbitrator to determine arbitrability is also of no moment. The JAMS rules would only apply *if* Lilly had agreed to arbitrate disputes with Defendant pursuant to the JAMS rules, which it did not. Lilly did not agree to arbitrate with Defendant at all, and Lilly, therefore, should not be subjected to arbitration without a court determination that Defendant acquired rights under the APNS Collaboration Agreement. And, in *Auromedics Pharma*, another case cited by Defendant, the parties did not dispute the "gateway" question that there was a valid arbitration agreement, *Auromedics Pharma*, 2021 WL 3048406, at *4, as the Parties do here.

Whether Defendant is entitled to force Lilly to arbitrate is a decision for the Court, who must decide whether Defendant has appropriately stepped into the APNS' shoes in the APNS Collaboration Agreement. Such an issue is not an issue of arbitrability for an arbitrator, but rather is a gating issue that must be decided by a court. The Complaint plausibly states a claim requesting a declaration that Defendant has no rights under the APNS Collaboration Agreement.

### B.    Defendant's Claims are Subject to Delaware's Statute of Limitations

Contrary to Defendant's claims, the Complaint also properly states a claim for a declaration that Defendant's claims are untimely. *See* Complaint ¶¶ 46-52.

In Delaware, the statute of limitations is a procedural matter that is governed by the forum's law. *Hatcher v. Collecto, Inc*., 2021 WL 765759, at *2 (D. Del. Feb. 26, 2021). To determine the applicable statute of limitations where the cause of action arises outside of Delaware, a borrowing statute applies. In relevant part, Delaware's borrowing statute provides:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. § 8121. The purpose of Delaware's borrowing statute is "an act to prevent 'forum-shopping.'" *Pack v. Beech Aircraft Corp*., 132 A.2d 54, 57 (Del. 1957).

Under a literal application of the borrowing statute—which, as explained below, is appropriate in this case—Delaware's three year statute of limitations applies and bars Defendant's claims. Lilly has adequately pled this issue in the Complaint. Lilly does not dispute that the cause of action arose outside of Delaware, and as the shorter time limitation, the Delaware statute of limitations should apply.

Defendant claims that Lilly's interpretation of the Delaware borrowing statute is incorrect and that Lilly has "forced" Defendant into Delaware. *See* Br. at 16, 18. That is not so. As an initial matter, Defendant is a Delaware company. Lilly did not "force" Defendant into Delaware; rather, Defendant chose to make itself privy to suit in Delaware by registering itself in Delaware. In addition, Defendant contends that Lilly has misinterpreted the Delaware borrowing statute by citing to a single case, *Saudi Basic Industries Corporation*. While Defendant analogizes this case to *Saudi Basic* in an effort to avoid the application of Delaware's three-year statute of limitations, the situation in *Saudi Basic* is significantly distinguishable from this action, where Defendant is the party who is forum shopping, and Lilly has filed against Defendant in the locale where

13

Defendant is incorporated. *See Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1 (Del. 2005).

In *Saudi Basic*, Saudi Basic sought a declaratory judgment that the defendants' royalty payments were not overcharges that violated the relevant contract. *See id.* at 10. The defendants brought counterclaims based on Saudi Basic's breaches of certain contracts, as well as breaches of fiduciary duties and the duty of good faith. *See id.* Both on summary judgment and in briefing regarding judgment as a matter of law, Saudi Basic argued that Delaware's borrowing statute applied and that the defendants' claims were barred by Delaware's statute of limitations. *See id.* at 11.

Specifically, Saudi Basic argued that the claim arose in Saudi Arabia, so the statute of limitations periods of Saudi Arabia (no limitation period) and Delaware (three years) could apply, and that under the Delaware borrowing statute, the shorter of the two, Delaware's, should apply. *See id.* at 14-15. The Delaware Supreme Court affirmed the lower court's decision that Delaware's three year statute of limitations did not apply, as doing so would "subvert the statute's fundamental purpose, by enabling [Saudi Basic] to prevail on a limitations defense that would never have been available to it" had the claims been brought in the jurisdiction where the cause of action arose. *See id.* at 15, 17-18. The court's decision was grounded in the idea that application of the borrowing statute as written would subvert the statute's fundamental purpose, which is to prevent forum shopping. *See id.* at 16-18. Saudi Basic intentionally came to Delaware, a state with no connection to the parties, and chose Delaware as a forum to obtain a shorter statute of limitations. *See id.* at 15. Unlike Saudi Basic, in this case, Defendant has a connection to Delaware and has availed itself of Delaware by being a Delaware limited liability company.

Post-*Saudi Basic*, the majority view interprets its holding to be that "the plain language of the borrowing statute governs unless the party asserting the underlying claim was forced into a Delaware forum." *CHC Invs., LLC v. FirstSun Cap. Bancorp*, 2020 WL 1480857, *7 (Del. Ch. Mar. 23, 2020), *aff'd*, 241 A.3d 221 (Del. 2020) (unpublished table decision); *see also TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 327 (D. Del. 2014) (applying Delaware's borrowing statute where "a literal construction of the borrowing statute would not subvert the statute's underlying purpose"). The majority view, as noted by the Delaware Chancery Court and affirmed by the Delaware Supreme Court, "least offends the principles of statutory construction and best targets the statute's purpose." *CHC Invs.*, 2020 WL 1480857, at *8.

Here, application of the literal construction of the borrowing statute would not "subvert the statute's underlying purpose." *See TL of Fla.*, 54 F. Supp. 3d at 327. Put simply, Lilly is not forum shopping. Lilly filed in Delaware, where there is personal jurisdiction over Defendant, as Defendant is a Delaware limited liability company. *See* Complaint ¶ 4. It is entirely proper for Defendant to be sued in the jurisdiction in which it is incorporated, which Lilly has done. As this Court has stated, "applying Delaware's statute of limitations to a Delaware resident's debt hardly seems to 'subvert the statute's fundamental purpose.'" *Hatcher*, 2021 WL 765759, at *4 (quoting *Saudi Basic*, 866 A.2d at 17). In a similar way, applying Delaware's statute of limitations to a Delaware limited liability company's breach of contract claim, also "hardly seems to 'subvert the statute's fundamental purpose.'" *See id.*

Defendant boldly accuses Lilly of "flagrant forum shopping" by filing in Delaware, but Lilly has merely sued Defendant in its jurisdiction of incorporation. Rather, it was Defendant, in a desperate attempt to secure jurisdiction in Illinois, that filed a *pro se* complaint in violation of Seventh Circuit jurisprudence. And Lilly is not even an Illinois resident – but an Indiana company

with its principal place of business in Indianapolis. Thus, this situation is not akin to the situation in *Saudi Basic*. Lilly did not file in Delaware in an attempt to subvert the borrowing statute's purpose; instead, Lilly filed in the appropriate location to secure personal jurisdiction over Defendant.

Even if the Court found that the Illinois or Indiana ten year statute of limitation applies, Defendant's claims would still be untimely. In Delaware, the cause of action for a breach of contract accrues at the time that the contract is breached. *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 251 (D. Del. 1990) (finding that cause of action for nonpayment under contract accrued and the statute of limitations began running when payment was due). Defendant claims to have known about the APNS Collaboration Agreement since at least 2010, including through allegedly filing, in Delaware, a UCC Financing Statement asserting that the statement covered the APNS Collaboration Agreement, and allegedly acquiring rights under the APNS Collaboration Agreement in 2011. *See* Br. at 7-8. And, the first of the payments that Defendant purports to be owed would have been due in 2013. Therefore, the cause of action for Lilly's lack of payment would have accrued, at the latest, when this first payment was due. *See id.* That was over ten years ago, outside of both the Illinois and Indiana statutes of limitations.

In its Complaint, Lilly pled sufficient facts to show that Defendant is a Delaware limited liability company and that, under Delaware law, Delaware's borrowing statute and the three year statute of limitations would apply. As Defendant is a Delaware limited liability company, Lilly's action in Delaware is not forum shopping, nor would application of Delaware's borrowing statute be subverting the purpose of the statute. Therefore, this claim should survive Defendant's motion to dismiss.

### III.    **This Action Should Not Be Transferred As Illinois Is Not An Appropriate Forum**

Defendant maintains that this action should at least be transferred to Illinois, but Defendant has not met its burden to show that a transfer is warranted.[5] Instead, Plaintiff's choice to litigate this issue in Defendant's home state, along with other pertinent factors, support the conclusion that this case should not be transferred.

Under 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a); *see also Jumara*, 55 F.3d at 878. In determining whether a transfer is warranted, there is "no definitive formula or list of factors to consider," but the Third Circuit has identified twelve interests for the Court to weigh in its decision. *See Jumara*, 55 F.3d at 879; *Citrix Sys., Inc. v. Parallel Networks Licensing, LLC*, 2020 WL 2309073, at *6 (D. Del. May 8, 2020), *report and recommendation adopted*, 2020 WL 8079822 (D. Del. June 4, 2020). These interests include: plaintiff's forum choice, defendant's forum preference, whether the claim arose elsewhere, the convenience of the parties, the convenience of the witnesses (to the extent the witnesses may actually be unavailable in one of the forums), location of books and records, enforceability of the judgment, practical considerations that could make trial expeditious and inexpensive, administrative difficulty from court congestion, local interest in deciding local controversies at home, public policies of the forums, and the familiarity of the trial judge with state law in diversity cases. *See Jumara*, 55 F.3d at 879-880. In ruling on a defendant's motion to

---

[5] Defendant uses 28 U.S.C. § 1404(a) as the basis to argue that this action should be transferred. Section 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Therefore, Defendant does not dispute that venue in Delaware is proper.

transfer, "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879 (internal citations omitted). It is Defendant's burden to establish that the proper weighing of interests favors transfer to the Northern District of Illinois. *See id.* Defendant has not met that burden here.

Lilly's choice of venue is Delaware. As Defendant aptly notes, *see* Br. at 19, a plaintiff's forum preference "receives enhanced weight only where it has chosen to file suit on its home turf or can identify a rational and legitimate reason for litigating in Delaware." *In re DBSI, Inc.*, 2014 WL 4828882, at *4 (D. Del. Sept. 25, 2024). Lilly's rational and legitimate reason for litigating in Delaware is that Defendant is a Delaware limited liability company and is at home in Delaware. Therefore, Lilly could obtain jurisdiction over the Defendant. Accordingly, Lilly's forum preference for Delaware should be given enhanced weight.

Further, the convenience of the parties does not favor Illinois. Lilly is not located in Illinois; it is headquartered and incorporated in Indiana. *See* Anderson Decl. ¶¶ 4-5. Defendant, as mentioned above, is a Delaware limited liability company whose sole member, upon information and belief, resides in California. Litigating in Illinois, therefore, is not any more convenient than litigating in Delaware. Lilly also disputes that there is jurisdiction over Lilly in Illinois. Further, while Defendant claims that "two key witnesses" are in Illinois, it has not identified these supposed witnesses nor is Lilly aware of the existence of any witnesses in Illinois. Public policy and local interest support litigating this case in Delaware, as Defendant is a Delaware limited liability company. This Court has more of an interest in litigating issues involving Delaware companies than does Illinois. Transfer to Illinois is also not supported by the existence of books and records (since such documents are not located in Illinois); congestion of the courts, as both the District of Delaware and Northern District of Illinois have busy dockets; and the familiarity of the trial judge

18

with state law in diversity cases, as the Delaware judges are well equipped to analyze state law, should that be a necessity here.

As Delaware is a proper forum for Lilly to sue Defendant, and Defendant has not met its burden to show that the case should be transferred to Illinois, this action should stay in Delaware.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Court should deny the Motion.

                                        POTTER ANDERSON & CORROON LLP

                                        */s/ Kevin R. Shannon*
OF COUNSEL:                             Kevin R. Shannon (#3137)
                                        Christopher N. Kelly (#5717)
David Lender (Admitted *pro hac vice*)  Callan R. Jackson (#6292)
WEIL, GOTSHAL & MANGES LLP              Hercules Plaza, 6th Floor
767 Fifth Avenue                        1313 North Market Street
New York, New York 10153                P.O. Box 951
Telephone: (212) 310-8000               Wilmington, DE 19801
                                        Telephone: (302) 984-6000
Dated:  July 9, 2024                    Facsimile: (302) 658-1192
                                        kshannon@potteranderson.com
                                        ckelly@potteranderson.com
                                        cjackson@potteranderson.com

                                        *Counsel for Plaintiff Eli Lilly and Company*